IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ALBERT C. DOUGHERTY,

                    Plaintiff,

          v.                         CASE NO.  08-3066-SAC

STATE OF KANSAS,
et al.,

                    Defendants.

                    O R D E R

     This civil rights complaint, 42 U.S.C. § 1983, was filed by
plaintiff while he was confined in the Wyandotte County Detention
Center in Kansas City, Kansas (WCDC)[1].  Plaintiff names as
defendants the State of Kansas; County of Wyandotte; Nursing Staff,
Correct Care Solutions (CCS); Nurse Tammy, Correct Care Solutions;
Dr. Enriquez, Wyandotte County mental health staff; and Dr. Gamble,
Wyandotte County medical staff.  Mr. Dougherty alleges that he was
incarcerated on January 18[2], and "let jail staff know of (his)
health issues."  He claims he is being denied proper daily medical
care for his stomach, back, and mental health issues.  He seeks
"continued proper medical care before, during, and after surgeries,"
proper placement, and financial compensation "due to pain and
suffering and abridgement of (his) constitutional rights."

     As count I, plaintiff claims "improper medical care, gross
negligence, and total disregard for (his) pain and suffering."  In

_____

     [1]     Plaintiff has since been transferred to El Dorado Correctional
Facility (EDCF), El Dorado, Kansas.

     [2]     Plaintiff does not provide the year of the events alleged in his
complaint, and the court assumes it is 2008.

support, he alleges he was not taken to a surgery appointment at K.U. Medical Center on February 14th. He further alleges that Floyd Garner, head administrator, asked him who would pay for it and told him Sheriff Green would not allow him to go.

Plaintiff also alleges that he saw Dr. Gamble for "the painful hernia" and was given motrin and a stomach binder, but that the binder was taken away two weeks later by Nurse Tammy who said another inmate needed it worse. However, he alleges his father then brought his own binder to him. Plaintiff also alleges that Dr. Gamble examined him regarding his stomach, prescribed motrin, and said there was nothing else he could do and plaintiff would be taken care of where he went to prison. He further alleges he has been given nothing for degenerative disc disease.

As Count II, plaintiff claims he has not been given "proper mental health meds" that were prescribed for him on the street by Dr. Shaw at Wyandotte Mental Health. In support, he alleges that the "state can't prescribe them" for him at WCDC. He also alleges that during the first week of February, Dr. Enriquez asked him what medicine he wanted since she couldn't give him "Serequel and Klonipis." He claims Dr. Enriquez had an attitude with him because he told her he did not "want to be doped up and feel out of it" and have stomach pain. He also alleges that on February 13, he saw "mental health Echols" and apparently complained that his meds were bothering his stomach and he needed a snack with his meds or to have them changed. He alleges "she told (him) she would talk to Dr. Enriquez about it," but he has heard nothing.

As Count III, plaintiff claims he has been denied an environment that is medically and mentally safe while he is

impaired.   In support,  he  alleges  that  despite  knowledge  of  his medical  issues  he  has  been  placed  with  violent  offenders.

**MOTION TO PROCEED IN FORMA PAUPERIS**

Plaintiff  has  filed  a  motion  for  Leave  to  Proceed  in  forma pauperis  (Doc.  2).   28  U.S.C.  §  1915  requires  that  a  prisoner seeking  to  bring  a  civil  action  without  prepayment  of  fees  submit  an affidavit  described  in  subsection  (a)(1),  and  a  "certified  copy  of the  trust  fund  account  statement  (or  institutional  equivalent)  for the  prisoner  for  the  6-month  period  immediately  preceding  the filing"  of  the  action  "obtained  from  the  appropriate  official  of each  prison  at  which  the  prisoner  is  or  was  confined."   28  U.S.C.  § 1915(a)(2).   Plaintiff  has  submitted  an  affidavit,  but  not  a statement  of  his  inmate  account  at  WCDC  and  EDCF  for  the  preceding six  months.   He  will  be  given  time  to  submit  this  document  in support  of  his  in  forma  pauperis  motion.   This  action  may  not proceed  unless  plaintiff  submits  all  documents  in  support  of  his motion  to  satisfy  the  requirements  of  Section  1915(a).

**SCREENING**

Because  Mr.  Dougherty  is  a  prisoner,  the  court  is  required  by statute  to  screen  his  complaint  and  to  dismiss  the  complaint  or  any portion  thereof  that  is  frivolous,  fails  to  state  a  claim  on  which relief  may  be  granted,  or  seeks  relief  from  a  defendant  immune  from such  relief.   28  U.S.C.  §  1915A(a)  and  (b).   Having  screened  all materials  filed,  the  court  finds  the  complaint  is  subject  to  being dismissed  for  reasons  that  follow.

**DEFENDANTS**

"To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Northington v. Jackson</u>, 973 F.2d 1518, 1523 (10th Cir. 1992). Plaintiff improperly names the State of Kansas, the County of Wyandotte, and "CCS Nursing Staff" as defendants. None of these three is a "person," and therefore none is a proper defendant in this Section 1983 lawsuit. Accordingly, this action shall be dismissed as against these three defendants.

**DENIAL OF MEDICAL CARE CLAIM**

An inmate's complaint of inadequate medical care amounts to an Eighth Amendment claim if the inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." <u>Miller v. Glanz</u>, 948 F.2d 1562, 1569 (10th Cir. 1991).

To satisfy the objective component, the inmate must show the presence of a "serious medical need," that is, "a serious illness or injury." <u>Estelle</u>, 429 U.S. at 104, 105; <u>Martinez v. Garden</u>, 430 F.3d 1302, 1304 (10th Cir. 2005), *quoting* <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)(quotation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment

or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981); Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000), quoting Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999).

With respect to the subjective component, deliberate indifference requires more than negligence, but less than conduct that is undertaken "for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. A prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. 511 U.S. at 837. An inadvertent failure to provide adequate medical care "fail[s] to establish the requisite culpable state of mind." Id., quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991). It follows that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106.

Furthermore, a mere difference of opinion between an inmate and prison or jail medical staff regarding treatment or diagnosis does not state a constitutional violation, but at most constitutes a negligence malpractice claim. Estelle, 429 U.S. at 106-07; Ledoux v. Davies, 961 F.2d 1536 (10th Cir. 1992); see Handy v. Price, 996 F.2d 1064, 1067 (10th Cir. 1993)(quarrel between prison inmate and doctor as to the appropriate treatment for hepatitis did not raise

an Eighth Amendment claim); <u>El'Amin v. Pearce</u>, 750 F.2d 829 (10th Cir. 1984)(A mere difference of opinion over the adequacy of medical treatment provided cannot provide the basis for an Eighth Amendment claim.); <u>Jones v. McCracken</u>, 562 F.2d 22 (10th Cir. 1977), <u>cert.</u> <u>denied</u>, 435 U.S. 917 (1978); <u>Smart v. Villar</u>, 547 F.2d 112 (10th Cir. 1976); <u>Coppinger v. Townsend</u>, 398 F.2d 392, 394 (10th Cir. 1968)(The prisoner's right is to medical care-not to the type or scope of medical care which he personally desires.).  As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind."  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

<u>Id</u>. at 105-106 (footnote omitted).

In addition, a delay in providing medical care does not violate the Eighth Amendment unless the plaintiff has suffered "substantial harm" from the delay.  <u>Olson v. Stotts</u>, 9 F.3d 1475 (10th Cir. 1993); <u>Mata v. Saiz</u>, 427 F.3d 745, 751 (10th Cir. 2005) quoting <u>Oxendine v. Kaplan</u>, 241 F.3d 1272, 1276 (10th Cir. 2001).  "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain'." <u>Garrett v. Stratman</u>, 254 F.3d 946, 950 (10th Cir. 2001).

The court has carefully considered plaintiff's allegations under the foregoing standards.  Even taking all plaintiff's factual

allegations[3] as true, the court finds that plaintiff fails to state a claim of cruel and unusual punishment under the Eighth Amendment. A claim of total denial of medical care differs from a claim of "improper" medical care.  Plaintiff generally claims that he was denied "proper" medical care, rather than all medical attention. The specific allegations in the complaint show that medical attention was afforded to plaintiff at the WCDC.  He was seen by a physician, a mental health doctor, and nurses, who provided some medication and treatment.

Moreover, plaintiff does not allege sufficient facts showing he had serious medical needs necessitating prompt medical attention while confined at WCDC.  He makes conclusory references to "health issues w/ his stomach, back and mental health," degenerative disc disease, and "the painful hernia."  After the complaint was filed, plaintiff sent a letter to the court with "a copy of medical records" attached, which was filed as a Supplement to the Complaint. The copies, which plaintiff explains were received from his outside physician, Dr. Phillip Martin, do not include a diagnosis of plaintiff having a serious condition requiring daily or prompt medical treatment while at WCDC.  To the extent the copies are legible, they mention an operation for self-inflicted stab wounds in June 2007 that revealed a hernia; and in January 2006 gallstones, "some spinal stenosis," back pain, panic disorders, leg pain, untreated high blood pressure, hypertension, depression, nightmares, insomnia, paranoia, and tenderness.  Plaintiff was treated with

---

[3]    Plaintiff's complaint contains several conclusory allegations.  The court is not obliged to accept statements as true that are not supported by any factual allegations.

pain medication and advised to "start PT."  Other records from 2003 and 2005 indicated anxiety, back and leg pain, that plaintiff was drinking about 10-15 beers a day and taking "multiple medications that are related to psychiatric illness," some vomiting daily, chest pain, foot rash, 1997 stab wound, peptic acid disease, costochondritis, tests showing abnormal liver function in 2003 but negative hepatitis tests, sometimes normal and sometimes abnormal cholesterol.  He was treated with a heating pad, pain medications, and advised to have future assessments.  A Radiology Exam Report indicates an "abdominal sonogram" was performed in August 2007, due to "abdomen pain," which showed numerous gallstones in the gallbladder with slight tenderness, and tenderness in the patient's abdominal wall "at the incision site."  Patient was "referred to surgeon for further evaluation."  Another Radiology Report on a spinal MRI done in January 2006, due to back pain, showed "(1) degenerative disc Dz + (2) some Spinal Stenosis," but "no evidence for definite disc herniation."  Physical therapy was again recommended.  These exhibits, while showing that plaintiff has had medical problems over the last several years, do not establish that he had been diagnosed with serious medical conditions requiring prompt medical treatment upon his arrival at WCDC.

Plaintiff's conclusory allegation that he let "jail staff" know of his "health issues" upon arriving at the jail does not establish that he made any named defendant aware of a serious medical need at that time.  He does not allege that he provided his prior physician's written prescriptions to defendants or any other evidence of an outside physician's current diagnosis of a serious condition.  The records he recently sent to this court were

obviously obtained after this lawsuit was filed[4].  Nor does he describe any obvious symptoms that he exhibited at WCDC, which demanded prompt medical treatment.  His allegation that he was not permitted to go to K.U. Medical Center for surgery is not sufficient, standing alone, to establish deliberate indifference to a serious medical need.  Plaintiff does not even allege what the surgery was for, and whether or not it was elective or medically necessary at that particular time.  He also fails to allege that he has suffered any substantial harm.  Plaintiff's complaints regarding a stomach binder indicate he was provided this treatment by jail medical staff, and when it was discontinued, he obtained his own from his father.  The actual facts alleged in the complaint, as opposed to the conclusory statements, plainly indicate Mr. Dougherty received attention and medication while at WCDC.  Plaintiff does not disclose what additional treatment had been prescribed or was medically and promptly necessary for his hernia and stomach pain. He was obviously examined and treated by Dr. Gamble for these conditions, and provides no reason for the court to assume that defendant Dr. Gamble failed to exercise his considered medical judgment[5].  Plaintiff does not allege what "proper mental health meds" were prescribed for him on the street, what serious condition they were prescribed for, or that he provided the jail with the prescription from his outside physician for particular drugs.  Nor

_____

[4]    Plaintiff would be well advised to provide copies of these records to medical staff at EDCF if he continues to have abdominal pain at the site of an incision, which might be infected.  He has not alleged pain and possible infection at this site as a medical condition for which he sought attention at WCDC.

[5]    The court in no way suggests that jail staff or medical personnel may deny medically necessary treatment to an inmate with a serious condition solely on the basis that he or she cannot pay for it.

does he suggest that when he was seen by defendant Dr. Enriquez he presented with symptoms that obviously required these particular medications. Thus, the court finds plaintiff has not alleged sufficient facts establishing a serious medical need for mental health medications. In addition, the facts that are alleged suggest plaintiff refused medications offered by Dr. Enriquez[6].

The court further finds that plaintiff's allegations suggest a mere difference of opinion between him and jail medical staff or at most negligent treatment,[7] rather than a federal constitutional violation. Accepting as true Mr. Dougherty's allegations that he told jail medical staff he needed a change of medication or a snack, that he apparently told Dr. Enriquez she could not give him Serequel and Klonipis, and that Dr. Enriquez asked what medication he would like, these facts evince the existence of a difference of opinion between plaintiff's lay wishes, and the professional opinions of the WCDC medical staff.

Finally, plaintiff alleges no facts suggesting he has suffered "substantial harm" from the delay of surgery or any treatment he received or lacked while at WCDC. Plaintiff is not entitled him to money damages without a showing of harm. Plaintiff's claims for injunctive relief against persons at the WCDC have been rendered

---

[6] Plaintiff rightly informed medical staff of pain or side effects he believed was due to medication. Medications, particularly those for mental health conditions, often come with undesirable side effects, which is a problem not just for inmates. Plaintiff does not allege that defendant Dr. Enriquez knew of medication that would be effective and not upset his stomach, but refused to provide it.

[7] Plaintiff's allegations may support a claim for medical malpractice. Estelle, 429 U.S. at 106 ("A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). In that event, his remedy would be in state, not federal, court. He is advised that there is a statutory time limit in which to file a medical malpractice action in state court.

moot by his transfer to EDCF, since he is no longer subject to conditions at the WCDC.

**UNSAFE ENVIRONMENT CLAIM**

The deliberate indifference standard, with its objective and subjective components, also applies to plaintiff's claim that he was denied a safe environment at WCDC. Under the objective component, plaintiff must present facts showing he was "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. 834. Under the subjective component, he must allege facts showing the defendants knew a substantial risk of serious harm existed. Plaintiff does not allege any facts to support either component. Nor does he allege that he suffered any harm from violent inmates or due to the alleged unsafe environment. He also does not allege that he made any named defendant aware of some danger and that particular defendant took no action. The court concludes that plaintiff fails to state sufficient facts in support of a claim of cruel and unusual punishment.

A pro se complaint must be given a liberal construction. See Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Plaintiff will be given the opportunity to file a Supplement to his Complaint alleging additional facts in support of his federal constitutional claims and to show cause why this action should not be dismissed for the reasons stated herein. If he fails to file a Supplement within the time provided, this action may be dismissed

without further notice.

    **IT IS THEREFORE ORDERED** that plaintiff is given thirty (30) days in which to submit a certified copy of his inmate account for the preceding six months from the institutions in which he was confined during that period of time.

    **IT IS FURTHER ORDERED** that within the same thirty (30) days plaintiff is required to file a Supplement to his complaint alleging additional facts sufficient to state a federal constitutional claim and showing cause why this action should not be dismissed for failure to state a claim.

    **IT IS FURTHER ORDERED** that this action is dismissed only as against the three improperly named defendants, the State of Kansas, the County of Wyandotte, and CCS Nursing Staff.

    **IT IS SO ORDERED.**

    Dated this 24th day of July, 2008, at Topeka, Kansas.

                            s/Sam A. Crow
                            U. S. Senior District Judge